FILED
U.S. DISTRICT COURT
AUGUSTA DIV.

2016 DEC 23  PM 3:07

CLERK M. ARMS
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
DUBLIN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. CV316-099 |
| MEADOWS REGIONAL MEDICAL CENTER, INC., | ) JURY TRIAL DEMANDED |
| Defendant. | ) |

## COMPLAINT

Plaintiff, the United States of America ("United States"), by and through its undersigned counsel, brings this civil action against Meadows Regional Medical Center, Inc. ("Defendant"). For its cause of action, the United States of America alleges as follows:

### Nature of the Action

1. For in excess of one year, the United States has been investigating financial relationships and transactions between Defendant and physicians affiliated with various practices that were identified either directly or indirectly in an agreement, dated February 1, 2015, between Defendant and a medical director.

2. After being informed of the existence of the investigation, Defendant has fully cooperated.

3. The United States and Defendant are working to resolve the issues arising out of the investigation.

4. In order to preserve the status quo as these efforts proceed, the United States hereby files this "civil suit," as that term is used by 31 U.S.C. § 3730(e)(3).

5. In this civil suit, the United States seeks to recover all available damages and other monetary relief under the common law and other causes of action that may be included in an amended

1

complaint at a later time, including the Government's claims under the False Claims Act, 31 U.S.C. §§ 3729-3733 ("FCA").

## Jurisdiction

6. The Court has subject matter jurisdiction over this action under 28 U.S.C. § 1345 because the United States of America is the plaintiff.

7. The Court has personal jurisdiction over Defendant because Defendant can be found within this District and has transacted business within this District.

## Venue

8. Venue is proper in the Southern District of Georgia under 28 U.S.C. §§ 1391(b)–(c) because Defendant transacts substantial business in this District, can be found within this District, qualifies to do business in Georgia, and some of the conduct at issue occurred within the Dublin Division in this District.

## Parties

9. Plaintiff is the United States of America (hereinafter the "United States").

10. Defendant is a non-profit corporation organized under the laws of the State of Georgia and maintains a principal business address of One Meadows Parkway, Vidalia, Georgia 30478.

11. Meadows Healthcare Alliance, Inc. is a non-profit corporation organized under the laws of the State of Georgia that is the direct controlling entity of Defendant, as well as other affiliated entities within the Meadows health system.

12. This health system also includes numerous physician practices organized separately or under the umbrella of Southeast Regional Primary Care Corporation, a non-profit corporation organized under the laws of the State of Georgia.

13. Officers of Defendant controlled, directed, and made all significant business decisions for the entire health system.

## The Stark Law

14. In 1989, Congress enacted the federal physician self-referral prohibition, or "Stark Law," to, in part, "curb overutilization of services by physicians who could profit by referring patients to facilities in which they have a financial interest." *United States ex rel. Schaengold v. Mem'l Health, Inc.*, No. 4:11-CV-58, 2014 WL 7272598, at *1 (S.D. Ga. Dec. 18, 2014) (Edenfield, J.) (internal quotation marks and citation omitted); *see generally* 42 U.S.C. § 1395nn.

15. The Stark Law contains two broad prohibitions that, in turn, are subject to various exceptions. First, the statute prohibits a physician from referring a patient to an entity for the furnishing of "designated health services" ("DHS") if the physician, or his or her immediate family member, has a "financial relationship" with the entity. 42 U.S.C. § 1395nn(a)(1)(A). Second, the statute prohibits the entity from "present[ing] or caus[ing] to be presented" any claim for Medicare reimbursement for DHS that was "furnished pursuant to a [prohibited] referral." 42 U.S.C. § 1395nn(a)(1)(B).

16. The term "financial relationship" is defined broadly to include any direct or indirect "compensation arrangement" involving "any remuneration between a physician . . . and an entity" that is not otherwise excepted by statute. 42 U.S.C. § 1395nn(a)(2) (defining "financial relationship"); *id.* § 1395nn(h)(1) (defining "compensation arrangement"); *see also* 42 C.F.R. § 411.354.

17. No payment will be made under Medicare for a designated health service provided in violation of the Stark Law, 42 U.S.C. § 1395nn(g)(1).

### The Anti-Kickback Statute

18. The Anti-Kickback Statute ("AKS"), 42 U.S.C. § 1320a-7b(b), arose out of congressional concern that remuneration given to those who can influence healthcare decisions could corrupt the medical decision-making process. To protect the integrity of the program from these difficult-to-detect harms, Congress enacted a per se prohibition against the payment of kickbacks in any form, regardless of whether the particular kickback gave rise to overutilization.

19. First enacted in 1972, Congress strengthened the statute in 1977 and 1987 to ensure that kickbacks masquerading as legitimate transactions did not evade its reach. *See* Social Security Amendments of 1972, Pub. L. No. 92-603, §§ 242(b) and (c); 42 U.S.C. § 1320a-7b, Medicare-Medicaid Antifraud and Abuse Amendments, Pub. L. No. 95-142; Medicare and Medicaid Patient and Program Protection Act of 1987, Pub. L. No. 100-93.

20. The AKS prohibits any person or entity from knowingly and willfully offering, paying, soliciting, making or accepting payment to induce or reward any person or entity for referring, recommending or arranging any good or item for which payment may be made in whole or in part by a federal health care program.

21. In 2010, Congress amended the AKS to state that "a claim that includes items or services resulting from a violation of this section constitutes a false or fraudulent claim for purposes of [the FCA]." Patient Protection and Affordable Care Act of 2010, § 6402(f), 42 U.S.C. § 1320a–7b(g).

### Medicare Program

22. In 1965, Congress enacted Title XVIII of the Social Security Act, known as the Medicare program, to pay for healthcare services for certain individuals. 42 U.S.C. § 1395, *et seq.*

23. The United States provides funds for most of the Medicare program expenditures, including claims submitted to a Medicare Administrative Contractor ("MAC").

4

24. Providers who wish to participate in Medicare must complete and periodically update an enrollment application. The application, which must be signed by an authorized representative of the provider, contains a certification statement that states

> I agree to abide by the Medicare laws, regulations and program instructions that apply to this provider . . . . I understand that payment of a claim by Medicare is conditioned upon the claim and the underlying transaction complying with such laws, regulations, and program instructions (including but not limited to, the Federal anti-kickback statute and the Stark law), and on the provider's compliance with all applicable conditions of participation in Medicare.

25. Defendant was, at all times relevant to this Complaint, enrolled in Medicare as a participating provider. As a participating provider, Defendant certified to the language contained in the enrollment application.

26. Hospitals submit patient-specific claims for reimbursement of inpatient and outpatient hospital services on a Form CMS-1450, also known as the UB-04. Both the Form 1450 and its predecessor form require hospitals to certify that the information reported on the form is accurate and complete.

27. Hospitals must submit annually a Form CMS-2552, more commonly known as the hospital cost report.

28. After the end of each hospital's fiscal year, the hospital files its hospital cost report with the MAC, stating the amount of reimbursement the provider believes it is due for the year. *See* 42 U.S.C. § 1395g(a); 42 C.F.R. § 413.20; *see also* 42 C.F.R. § 405.1801(b)(1). Medicare relies upon the hospital cost report to determine whether the provider is entitled to more reimbursement than it already received during the year or whether the provider has been overpaid and must reimburse Medicare. *See* 42 C.F.R. §§ 405.1803, 413.60 and 413.64(f)(1).

29. Defendant was, at all times relevant to this Complaint, required to submit annually a hospital cost report to the relevant MAC.

30. Every hospital cost report contains a "Certification" that must be signed by the chief administrator of the provider or a responsible designee of the administrator.

31. For all relevant years, the responsible provider official for Defendant was required to certify, and did certify, in pertinent part:

> to the best of my knowledge and belief, [the hospital cost report and statement] are true, correct, complete, and prepared from the books and records of the provider in accordance with applicable instructions, except as noted. I further certify that I am familiar with the laws and regulations regarding the provision of health care services, and that the services identified in this cost report were provided in compliance with such laws and regulations.

32. Thus, the provider is required to certify that the filed hospital cost report is (1) truthful, *i.e.*, that the cost information contained in the report is true and accurate; (2) correct, *i.e.*, that the provider is entitled to reimbursement for the reported costs in accordance with applicable instructions; (3) complete, *i.e.*, that the hospital cost report is based upon all information known to the provider; and (4) that the services provided in the cost report were billed in compliance with applicable laws and regulations, including the Stark Law and Anti-Kickback Statute.

### Meadows Improperly Obtained Payment From the United States.

33. Defendant, acting through its officers, employees, and/or agents, maintained a "financial relationship" (as defined in the Stark Law and regulations promulgated thereunder) with certain physicians affiliated with a practice as outlined in Paragraph 1. The physicians made referrals to Defendant for the furnishing of designated health services ("DHS") and Defendant subsequently sought and received reimbursement under Medicare for claims for such services, in violation of the Stark Law.

6

34. Furthermore, Defendant, acting through its officers, employees, and/or agents, violated the Anti-Kickback Statute by paying and causing others to pay remuneration to certain physicians affiliated with a practice as outlined in Paragraph 1 to induce such physicians to refer Federal health care program patients to Defendant. Defendant subsequently sought and received reimbursement for Federal health care program claims for services furnished pursuant to referrals by these physicians.

## Count One

### Payment by Mistake

35. The United States incorporates by reference all paragraphs of this Complaint set out above as if fully set forth herein.

36. The United States, acting in reasonable reliance on the truthfulness of the claims and the truthfulness of the Defendant's representations, paid Defendant certain sums of money for those certain claims, as alleged.

37. The United States' payments were based upon mistaken or erroneous understandings of material fact—specifically, the United States' mistaken or erroneous understanding as to Defendant's compliance with the Stark Law and Anti-Kickback Statute.

38. As a consequence of the conduct and the acts set forth above, Defendant was paid by mistake by the United States in an amount to be determined.

### Prayer for Relief

WHEREFORE, the United States respectfully prays for judgment in its favor as follows:

(1)   As to Count One (Payment By Mistake), for: (i) an amount equal to the monetary damages incurred by United States through Medicare's payments to Defendant, plus interest; and (ii) the costs and expenses of this action, plus interest, as provided

by law.

And for all other and further relief as the Court may deem just and proper.

## DEMAND FOR A JURY TRIAL

The United States demands a trial by jury.

This 23rd day of December, 2016.

Respectfully submitted,

                    EDWARD J. TARVER
                    UNITED STATES ATTORNEY

                    /s/ J. Thomas Clarkson

                    J. THOMAS CLARKSON
                    Assistant United States Attorney
                    Georgia Bar No. 656069
                    thomas.clarkson@usdoj.gov

U.S. Attorney's Office
Post Office Box 8970
Savannah, Georgia  31412
Telephone: (912) 652-4422